UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,

v.

ALEXANDER ORTIZ,

                          Defendant.
------------------------------------------------------------X

**MEMORANDUM AND ORDER**
14-CR-669 (WFK)(RML)

**WILLIAM F. KUNTZ, II, United States District Judge:**

On March 29, 2016, Alexander Ortiz ("Defendant") waived indictment and pled guilty to a two-count information pursuant to a plea agreement. Defendant pled guilty to both counts in the information: Home Invasion Robbery and Possessing a Firearm during a Crime of Violence. The Court now sentences Defendant and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress and the President and contained in 18 U.S.C. § 3553(a). For the reasons discussed below, Defendant is hereby sentenced to forty-one months of incarceration for Home Invasion Robbery, sixty months of incarceration for Possessing a Firearm during a Crime of Violence, five years of supervised release, $13,000.00 in restitution, and a $200.00 special assessment.

## BACKGROUND

On December 24, 2014, Defendant and his co-defendants were indicted on five counts: Home Invasion Robbery Conspiracy, Home Invasion Robbery, Shipping Van Robbery Conspiracy, Shipping Van Robbery, and Possessing and Brandishing a Firearm During a Crime of Violence. Indictment, ECF No. 7. On March 29, 2016, Defendant waived indictment and, pursuant to a plea agreement, pled guilty to a two-count information: Home Invasion Robbery ("Count One") and Possessing a Firearm during a Crime of Violence ("Count Two"). ECF Entry Mar. 29, 2016; *see also* Waiver of Indictment, ECF No. 49; Information, ECF No. 50; Plea Agree., ECF No. 52.

The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

1

# DISCUSSION

## I. Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. When the District Court chooses to impose a sentence outside the Sentencing Guidelines range, the Court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The Court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form[.]" *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

## II. Analysis

### 1. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

#### a. Background

Defendant was born on February 27, 1967 to Jose Ortiz and Mariana Gonzalez. Presentence Investigation Report ("PSR") ¶ 42, ECF No. 53. Defendant's father died of cancer when Defendant was three years old, and Defendant's mother died on July 23, 2015 while

Defendant was incarcerated for the instant offense. *Id.*; Def. Sentencing Mem. at 9, ECF No. 56. Defendant was born in New York City, and spent his preschool years in Camden, New Jersey, before eventually moving to Chicago, Illinois. PSR ¶ 43.

When Defendant was approximately twelve years old, his mother's domestic boyfriend for about three years, Clay Torres, stabbed her in the head. *Id.* Mariana Gonzalez, Defendant's mother, spent a month in the hospital, while Defendant's brothers took him back to New York. *Id.* Defendant also reports that while his mother dated Torres, Torres's sister sexually molested Defendant when babysitting him. *Id.* ¶ 44. The abuse spanned three years and ended when Defendant moved to Brooklyn, New York, after his mother was stabbed. *Id.* ¶¶ 44–45.

In 1980, Mariana moved to Brooklyn to join her family with another domestic partner, Soto Bolivar. *Id.* ¶ 45. Mariana and Soto Bolivar never married, but their thirty-five relationship lasted until Mariana's death. *Id.* ¶ 45. Mariana had thirteen children, nine surviving, with several romantic partners. *Id.* ¶ 46.

Defendant became a father at the age of fifteen. *Id.* ¶ 48. Since then, Defendant has married twice, has had five children with five women, and has three stepchildren. *See id.* ¶¶ 48–52. The daughter of Defendant and his current wife suffers from Langerhans Cell Histiocytosis ("LCH"), a form of cancer causing tumor growths throughout the body. *Id.* ¶ 52; Def. Sentencing Mem. at 9. Defendant's daughter was diagnosed with LCH when she was two years old and has gone through surgery and chemotherapy, which finished at the end of 2015. PSR ¶¶ 52, 53.

b. **Criminal History**

Defendant committed his first crime at the age of seventeen. *Id.* ¶ 26. According to an arrest report, Defendant was caught jumping over the fence while carrying a pair of pliers, apparently in an attempted burglary. *Id.* Defendant was sentenced to one year of conditional discharge. *Id.*

At the age of eighteen, Defendant was arrested for selling marijuana to an undercover police officer. *Id.* ¶ 27. At the time of the arrest, Defendant appeared to be in possession of cocaine. *Id.* Defendant was fined $100.00. *Id.* At the age of nineteen, Defendant was observed selling marijuana, and was fined $500.00 for this crime. *Id.* ¶ 28. At the age of twenty, Defendant stole a car. *Id.* ¶ 29. Defendant was sentenced to nine months of custody.

At the age of twenty-one, Defendant, along with two co-defendants, committed a robbery at gunpoint and fired two shots into the victim's vehicle. *Id.* ¶ 30. Defendant was charged with robbery in the first degree and criminal possession of a weapon in the third degree. *Id.* On March 9, 1990, Defendant received fifteen years of custody for the robbery count and one year of custody for the weapon count. *Id.* While in custody, Defendant was disciplined for drug use in 1998 and for an incident involving drugs and smuggling in 1993. *Id.*

At the age of twenty-three, Defendant and a co-defendant shot an individual in the stomach. *Id.* ¶ 31. Defendant received a sentence of seven years of custody. *Id.* Defendant was paroled on October 13, 2000. *Id.* ¶¶ 30–31.

### c. Nature and Circumstances of the Current Offense

An investigation by the Bureau of Alcohol, Tobacco, Firearms and Explosives uncovered the instant offense. *Id.* ¶ 3. The two victims in this case owned a retail business that sold

watches, perfumes, and other items. *Id.* The business stored its merchandise in the victims' apartment. *Id.* ¶ 4.

On October 12, 2014, an unidentified female co-conspirator arrived at the apartment. *Id.* When the victim opened the door, Defendant and an unidentified male co-conspirator forced their way into the apartment. *Id.* Defendant and the male co-conspirator impersonated police officers. *Id.* Both displayed counterfeit badges. *Id.* The male co-conspirator carried a gun. *Id.* The imitation police officers "arrested" the victim for credit card fraud, handcuffed him, and took him to another room, where they used a second pair of handcuffs to shackle him to a door. *Id.* They told the victim he would be shot if he moved. *Id.*

Defendant and his co-conspirator then placed approximately $13,000.00 worth of cash and merchandise into large laundry-type bags. *Id.* As Defendant and his co-conspirators fled the apartment, a second victim arrived and was pushed out of the way. *Id.* Neither victim sustained injuries. *Id.*

Federal law enforcement obtained an arrest warrant for Defendant after reviewing video surveillance, and based on an ongoing investigation into other robberies. *Id.* ¶ 5. A search resulted in the seizure of, *inter alia*, items stolen in the robbery, an airsoft semi-automatic BB gun, a security guard badge, and a stun gun. *Id.*

### 2. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant

with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense. Defendant orchestrated his crime with two co-conspirator, and his crime required advance planning. Defendant and his male co-conspirator posed as law enforcement in order to gain entry into an individual's apartment. They displayed false badges to gain the victim's trust. In addition to handcuffing the victim, Defendant's co-conspirator possessed a gun and threatened to use it to instill fear and to keep the victim as a hostage in the victim's own apartment.

The Court's sentence also accounts for specific and general deterrence. Defendant's first crime took place when he was seventeen years old. PSR ¶ 26. Defendant was then arrested every year thereafter for crimes of increasing severity. *Id.* ¶¶ 27–30. At the age of twenty-one, Defendant graduated from individual crimes of theft and drug sales to committing crimes in groups utilizing firearms. *See id.* ¶ 30. In 1998, for example, Defendant and two co-defendants used a gun to rob a victim and fired two shots into the victim's car. *Id.* Similarly, at the age of twenty-three, Defendant and a co-defendant shot a person in the stomach. *Id.* ¶ 31.

Defendant's criminal history evidences an escalation in the sophistication of his crimes, as well as the danger his crimes pose to the public. Defendant has shown a willingness not only to brandish but also to use a firearm. Incarceration is the only way to protect the public from any further crimes of Defendant.

An example of a striking similar crime from the indictment in this case is especially illustrative. On November 5, 2014, Defendant, together with three unidentified co-conspirators,

robbed a courier company that transports deliveries going to John F. Kennedy International Airport. *Id.* ¶¶ 34–35. Defendant and his co-conspirators used a red van to block a white van. *Id.* ¶ 35. After boxing in the white van, Defendant's co-conspirators exited the red van with silver shields around their necks while displaying handguns. *Id.* They identified themselves as police officers and informed two victims that they were being arrested for possession of stolen merchandise. *Id.* Defendant's co-conspirators then handcuffed the two victims, threw them in the back of the red van, drove around for approximately half an hour, stole one of the victim's driver's license along with sixty dollars, stole the other victim's debit card, before releasing the victims and leaving them on the street. *Id.* ¶ 36. When the victims returned to their van, over $30,000.00 worth of electronics were missing. *Id.* An investigation by the New York City Police Department connected Defendant to this November 5, 2014 armed robbery. *Id.* ¶ 37.

The Court's sentence is necessary to punish Defendant and to deter him, and other like Defendant, from similar future crimes. The Court's sentence also sends a strong signal to Defendant's co-conspirators that illegal activity results in serious consequences that must be faced.

### 3. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3). Defendant pled guilty to Home Invasion Robbery ("Count One") and Possessing a Firearm during a Crime of Violence ("Count Two").

For Count One, Defendant faces a maximum term of imprisonment of twenty years. 18 U.S.C. § 1951(a). Defendant also faces a maximum term of supervised release of three years, *id.*

§ 3583(b)(2); a maximum fine of $250,000.00, *id.* § 3571(b); and a special assessment of $100.00, *id.* § 3013.

For Count Two, Defendant faces a mandatory minimum term of imprisonment of five years and a maximum term of imprisonment of life. *Id.* § 924(c)(1)(A)(i). Defendant also faces a maximum term of supervised release of five years, *id.* § 3583(b)(1); a maximum fine of $250,000.00, *id.* § 3571(b); and a special assessment of $100.00, *id.* § 3013.

Multiple terms of supervised release shall run concurrently. *Id.* § 3624(e). Defendant is ineligible for probation. *Id.* § 3561(a)(2), (a)(3).

### 4. The Kinds of Sentence and the Sentencing Range Established For Defendant's Offenses

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]" 18 U.S.C. § 3553(a)(4)(A).

For a violation of 18 U.S.C. § 1951(a), Defendant faces a base offense level of twenty. *See* United States Sentencing Commission, *Guidelines Manual*, § 2B3.1(a) (Nov. 2015) ("U.S.S.G."). Because Defendant physically restrained the victim in order to facilitate the commission of the crime, two levels are added. *Id.* § 2B3.1(b)(4)(B). Defendant represented himself as a police officer, and, as a result, provided sufficient indicia to the victim that he legitimately held a position of public trust, so two levels are added. *Id.* § 3B1.3. Because Defendant demonstrated acceptance of responsibility, a reduction of three levels is appropriate. *Id.* § 3E1.1.

For a violation of 18 U.S.C. § 924(c), the Guidelines do not provide a base offense level, but directs the Court to impose a term of imprisonment as required by statute: here, a minimum

8

term of imprisonment of sixty months. *Id.* § 2K2.4(b). As a result, no weapon enhancement is added to Defendant's underlying offense for Home Invasion Robbery. *Id.* § 2K2.4, comment. (n.4).

Defendant's total adjusted offense level is twenty-one. With a criminal history category of II, the Guidelines suggest an imprisonment range of forty-one to fifty-one months for Home Invasion Robbery. *Id.* Ch.5, Pt.A. Accordingly, with the mandatory sixty-month term of incarceration for Possessing a Firearm During a Crime of Violence, the Guidelines suggest an imprisonment range of 101 to 111 months.

The Guidelines also suggest a term of supervised release of one to three years for Count One, *id.* § 5D1.2(a)(2); a term of supervised release of two to five years for Count Two, *id.* § 5D1.2(a)(1); a fine between $7,500 and $75,000, *id.* §§ 5E1.2(c)(3), (h)(1); the costs of prosecution, *id.* § 5E1.5; and restitution, *id.* § 5E1.1. Defendant is ineligible for probation under the Guidelines. *Id.* §§ 5B1.1(b)(2), (b)(3).

The United States Probation Department recommends a sentence of 101 months custody: forty-one months of custody for Count One and sixty months of custody for Count Two. U.S. Prob. Dep't Rec. at 1, ECF No. 53-1. Defense counsel, in its sentencing memorandum to the Court, requests the Court grant a downward departure given "exist[ing] mitigating factors pursuant to 18 U.S.C. § 3553(a)." Def. Sentencing Mem. at 2. The Government recommends a Guidelines sentence. Gov't Sentencing Mem. at 1, ECF No. 59.

### 5. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission[.]" 18 U.S.C. § 3553(a)(5).

The Court may depart upwards under Policy Statement § 4A1.3(a)(2)(E) for Defendant's conspiracy to rob, and robbery of, the shipping van in October and November of 2014. U.S.S.G. § 4A1.3(a)(2)(E) (permitting an upward departure for prior similar adult criminal conduct not resulting in a criminal conviction).

### 6. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

The Guidelines suggest a term of imprisonment between 101 to 111 months. The statute for Home Invasion Robbery sets forth a maximum term of imprisonment of twenty years. 18 U.S.C. § 1951(a). The statute for Possessing a Firearm during a Crime of Violence sets a mandatory minimum term of imprisonment of five years and a maximum term of life imprisonment. *Id.* § 924(c)(1)(A)(i).

The Court's sentence takes into account the factors set forth under § 3553(a) and imposes a sentence that is sufficient but no greater than necessary to accomplish the purposes of § 3553(a). Accordingly, the Court's sentence adequately avoids unwarranted sentence disparities among defendants with similar records.

### 7. The Need to Provide Restitution

Lastly, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). Restitution in the amount of $13,000.00 is mandatory under the Mandatory Victim Restitution Act of 1996. *Id.* § 3663A.

## CONCLUSION

A sentence of forty-one months of incarceration for Home Invasion Robbery Conspiracy and sixty months of incarceration for Possessing a Firearm during a Crime of Violence, to be followed by five years of supervised release, with the $200.00 mandatory assessment and $13,000.00 in restitution, is appropriate and comports with the dictates of § 3553. This sentence is consistent with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2).

The Court expressly adopts the factual findings of the Presentence Investigation Report and imposes the special conditions of release proposed by the Probation Department.

**SO ORDERED.**

s/WFK
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: December 7, 2016
Brooklyn, New York